## WARREN CONSTRUCTION COMPANY *v.* POWELL.

[No. 21,283. Filed November 23, 1909.]

1. TRIAL.—*Verdict.—Interrogatories.—Conflict.*—A general verdict for the plaintiff constitutes a finding in his favor upon all of the issues; and answers to interrogatories to the jury will not control such verdict unless they are in irreconcilable conflict therewith. p. 212.

2. TRIAL.—*Instructions.—Preponderance of Evidence.—Number of Witnesses.*—An instruction, in a personal injury case, that "all other things being exactly equal in all respects, the witnesses

being of equal intelligence and credibility, and possessing equal opportunities of knowledge of the matters about which they testified, and testifying with equal candor, intelligence and fairness, the weight of the evidence as to any matter may be considered by you to be on the side which has the greater number of witnesses in its favor thereon," is misleading. *Indianapolis St. R. Co. v. Schmidt*, 163 Ind. 360, distinguished. p. 214.

From Marion Circuit Court (14,906); *Henry Clay Allen*, Judge.

Action by Hugh Powell against the Warren Construction Company and another. From a judgment for plaintiff against defendant company, it appeals. *Reversed.*

*Elmer E. Stevenson*, for appellant.

*Wymond J. Beckett, Byron K. Elliott* and *William F. Elliott*, for appellee.

JORDAN, J.—Action in the lower court by appellee against the Warren Construction Company and the American National Bank, to recover damages for personal injuries sustained by reason of the falling of a wall of the American National Bank building, in the tearing down of which the appellee was assisting.

The complaint is in one paragraph, and alleges that said defendants, and each of them, are corporations, duly organized; that defendant American National Bank is the owner of the building at the southeast corner of Pennsylvania and Market streets, in the city of Indianapolis, which building was known as the "Federal Building;" that said bank employed its codefendant, the Warren Construction Company, to remodel said building, so as to fit it for use as a bank; that the Warren Construction Company exercised at all times supervision of said work; that, pursuant to said employment, said construction company undertook to change the basement of the building; that the roof of the basement was composed of arches made of brick, said arches being about four feet wide and based upon I beams, these I beams being composed of large beams of iron or steel, and extending

from one wall to another; that by means of said walls, I beams and arches the first floor of said building and the roof of the basement thereof were held in position; that about January 4, 1906, plaintiff was employed by the defendants to work in and about the basement of said building; that the defendants ordered and directed him to work in the basement in remodeling and tearing down a portion of one of the cross-walls; that this wall extended north and south through the basement, was about eighteen feet long and from thirteen to eighteen inches thick, and extended from the floor of said basement up to and supported the ceiling of the basement; that he was ordered and directed by the defendants to remove a part of said wall, which was originally about eight feet high and supported as alleged; that the defendants had removed the upper part of said wall its entire length, had separated the wall from the ceiling which it supported, and had torn said wall down to the height of two or three feet from the floor of said basement; that, at the time plaintiff was ordered by the defendants to work on said wall, the upper part thereof had been removed, and he was directed by the defendants to remove, dig out and tear down the lower part of the wall; that he did not remove or assist in removing the upper part of said wall, but at the time he commenced to work upon the wall the upper part had been removed, and at that time was entirely separate and disconnected from the ceiling of the basement, and was only two or three feet high from the floor of the basement; that while plaintiff was at work on the wall, pursuant to the direction of the defendants, the ceiling of said basement fell at the point where said wall had been removed from the ceiling, and a portion of it fell upon and injured the plaintiff, without any fault upon his part; that the defendants had negligently removed said wall without placing any support under the ceiling at the point where the wall supported the ceiling; that the ceiling of the basement

fell by reason of defendant's negligence in failing to prop or stay the same in any way; that the defendants knew there was no I beam or support of any kind at the base of said arch above said wall; that the bricks above said wall were placed straight and vertical, and did not form an arch above the wall, and that the arch was not supported and sustained in position in any way, except by the adherence of the cement to the bricks; that the defendants knew that said arch above said wall was not supported in any way except as last stated, but negligently failed in any way to support or sustain said wall; that the defendants knew that the ceiling in its condition was dangerous and likely to fall and injure any one working on the wall or about the same; that the defendants ordered and directed this plaintiff to work upon said wall under said ceiling, but negligently failed to notify and warn him of the dangerous condition of the ceiling of said basement; that they knew that the ceiling above the wall was not supported by an I beam, or in any other way; that the plaintiff did not know that the base of said arch from which said wall had been removed was not supported by an I beam, and he did not know that said ceiling at said point was likely to fall, neither did he know that the condition of the foot of said arch above said wall was dangerous, and that the same was likely to fall and injure him while working upon said wall; that by reason of the defendants' negligence in failing properly to inspect the foot of said arch above said wall, and by reason of their negligence in failing to sustain said ceiling in any way, the arch fell upon the plaintiff, and injured him about the head, body, back and legs, causing deep, painful and lasting injuries to the head, chest, abdomen, pelvis, etc.; that said injuries are permanent, and have caused, and will cause, plaintiff to suffer great pain and anguish during his life; that he has been unable to work and earn money; that he has been put to large expense in treating said injuries, and he will be a permanent cripple and invalid as long as he lives. Where-

fore he demands judgment for $15,000, and all other proper relief.

A demurrer on the part of defendant Warren Construction Company, for insufficiency of facts to this complaint, was overruled. Defendant American National Bank answered the complaint in two paragraphs, alleging in one that it had let by contract to the Warren Construction Company, an independent contractor, the work of remodeling its building; that it had nothing to do with the work of remodeling the building, except to let the contract. The Warren Construction Company answered by a general denial. There was a trial by jury, and at the close of the trial the court, on motion of the defendant American National Bank, instructed the jury to return a verdict in its favor. A verdict was returned in favor of plaintiff against defendant Warren Construction Company, and damages were assessed at $8,-500. Along with the general verdict the jury returned answers to a series of interrogatories. A motion by defendant construction company for judgment upon these interrogatories was denied. Its motion for a new trial was also overruled.

The errors assigned and relied on by appellant for reversal are. (1) overruling its motion for judgment on answers to the interrogatories, (2) overruling its motion for a new trial.

The interrogatories propounded to and answered by the jury, among other things, disclose that under the contract between appellant and the American National Bank, the bank furnished to said appellant detailed drawings to be used by it in remodeling the building; that these drawings purported to show the old structural work of the building, together with the proposed new work to be done, and were prepared by Holabird & Roche, architects of Chicago, who had a good reputation among builders of that city for competency and carefulness in doing that kind of work; that appellant had knowledge of the good reputation of these

architects; that the drawings furnished to appellant disclosed the existence of an iron beam at the first floor in the wall, a part of which fell on appellee, and that said iron beam extended from the north to the south cross-wall. It does not appear, however, from the answers to the interrogatories that this I beam was in the wall, as represented by the drawings. It is shown by an answer to an interrogatory that if this iron beam had been in the position as represented in the drawings the accident would not have happened. It further appears, by answers to interrogatories, that appellant, before the accident in question, had no knowledge that there was not in the wall of the first floor an iron beam extending from the north cross-wall to the south cross-wall. Aside from the mere conclusion of the jury, as stated in interrogatory fourteen, it is not disclosed by the interrogatories that the appellant had any reasonable grounds to rely upon the drawings furnished to it for remodeling the building. Upon the contrary, it is shown by an answer to one of the interrogatories that there was no examination on the part of appellant of the drawings in question in respect to the wall in controversy, and the nature thereof, before it proceeded to place men at the work of tearing down said wall.

We must presume that the jury, by its general verdict, found all of the facts essential to a recovery in favor of appellee, and after a full consideration of the special

1. findings, as made through the answers to the interrogatories, we are unable to discover any conflict between these findings and the general verdict that will serve to overthrow the latter. It follows, therefore, that appellant's motion for judgment in its favor upon the answers to the interrogatories was properly denied.

Appellant's counsel, under the point that the court erred in overruling the motion for a new trial, among other things argues: (1) that the verdict is not sustained by sufficient evidence; (2) that the damages are excessive; (3) that the

court erred in giving certain instructions to the jury. As the judgment must be reversed for the error hereinafter pointed out, we pass, without considering, the first and second grounds set forth and urged by appellant as causes for reversal. In passing, however, we may say, as relative to the question of damages assessed in favor of appellee, that the evidence shows that appellee, at the time he sustained the injury of which he complains, was about forty years old. He was a common laborer, and was at times employed in making mortar and in waiting upon brickmasons. As previously stated, at the close of the trial the court peremptorily instructed the jury to return a verdict in favor of the American National Bank. By this instruction the bank was virtually eliminated from the case, at least so far as the jury was concerned, in respect to the negligence of the Warren Construction Company. Nevertheless, under its charge to the jury, the court appears to have considered the bank as a defendant in the case, and that its negligence in controversy was a question to be determined by the jury. For example, by its first instruction the court stated to the jury what were the issues between the plaintiff and the two defendants. Its third instruction to the jury was as follows: "Unless it has been shown to your satisfaction that the injury which the plaintiff received was occasioned by the negligence of the defendants or one of them, in some of the respects alleged in the complaint, the plaintiff cannot recover." By the fourth instruction the jury was advised that before the plaintiff would be entitled to recover, it must appear by a fair preponderance of the evidence that the injury complained of was caused by the negligence of one of said defendants, and "if you find, by a fair preponderance of all of the evidence given in said cause, that either of the defendants was guilty of negligence as alleged, and that such negligence caused or contributed to such injuries, then you will determine whether the plaintiff was guilty of any negligence contributing to such injury," etc. By instruction

eight the court, among other things, said: "It is for you to determine, under these rules, considering all the facts and circumstances of this case, whether the defendants negligently omitted to perform any duty it owed to the plaintiff, or whether the defendants negligently performed any such duty." It is apparent from these charges that the court treated both defendants as still in the case. Appellant's counsel contend that the court, by these charges, so confused and misled the jury that a reversal of the judgment should be ordered. But we do not consider or determine this contention as advanced by appellant.

By instruction nineteen the court, in dealing with the subject of the burden of proof and the weight of the evidence, charged the jury as follows: "And all other things being exactly equal in all respects, the witnesses being of equal intelligence and credibility, and possessing equal opportunities of knowledge of the matters about which they testified, and testifying with equal candor, intelligence and fairness, the weight of the evidence as to any matter may be considered by you to be on the side which has the greater number of witnesses in its favor thereon." Counsel for appellant severely criticise and condemn this instruction, and insist that the court erred in charging the jury that the preponderance of the evidence was governed by the number of witnesses. In this contention we concur. The court, by the instruction in question, declared to the jury an erroneous test for determining the preponderance of the evidence in the case.

In the case of *Indianapolis St. R. Co.* v. *Johnson* (1904), 163 Ind. 518, in considering an instruction relative to the weight of the evidence, we said: "As a general rule, the preponderance of the evidence in a case does not depend upon or mean the greater number of witnesses testifying upon the matter or matters in issue. Counsel mistake the law in their contention that where the witnesses in a case are

equally credible in respect to their character, then, in such case, the preponderance of the evidence depends upon the number of witnesses testifying. This certainly is not the true test in any case. Any number of witnesses may be of equal credibility and possess equal information, and still differ greatly in the amount or weight of their evidence. The authorities generally affirm that the witnesses are not to be counted by the jury or court trying the case in order to determine upon which side is the preponderance, but the evidence given by them is to be weighed, and the preponderance thereof does not depend on the greater number of the witnesses in the particular case." Citing numerous cases. See, also, *Howlett* v. *Dilts* (1892), 4 Ind. App. 23; *Fritzinger* v. *State, ex rel.* (1903), 31 Ind. App. 350.

Counsel for appellee argue that precisely the same instruction as the one herein involved was sustained in the case of *Indianapolis St. R. Co.* v. *Schmidt* (1904), 163 Ind. 360. In this contention counsel are clearly mistaken. In that appeal the charge, as viewed by the court, was regarded as setting forth a remarkable situation in the character of witnesses. All that was held by the court in that case in regard to the instruction was that, even if it were erroneous, under the facts in that case it was harmless.

In the further attempt of appellee's counsel to parry the force of the argument of counsel for appellant relative to the error of the court in giving the instruction in question, they assert that it is not shown that appellee had a greater number of witnesses than appellant had, and therefore the instruction was harmless. In this assertion, however, counsel for appellee are mistaken, for the record discloses that a greater number of witnesses at the trial testified in favor of appellee than testified for appellant. Under the evidence and the circumstances in this case, we are unable to hold that the jury was not misled by the instruction in question

to the prejudice of appellant, and hence a reversal must follow. *Citizens St. R. Co.* v. *Jolly* (1903), 161 Ind. 80.

For the error in giving instruction nineteen the judgment is reversed and a new trial ordered.